1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE ANSEL ADAMS PUBLISHING
RIGHTS TRUST,

        Plaintiff,

  v.

PRS MEDIA PARTNERS, LLC, et al.,

        Defendants.

_____/

No. C 10-03740 JSW

**ORDER REGARDING
DEFENDANTS' MOTION TO
TRANSFER, OR IN THE
ALTERNATIVE, TO DISMISS**

      Now before the Court is the motion to transfer, or in the alternative, to dismiss filed by defendants PRS Media Partners, LLC and Rick Norsigian (collectively, "Defendants"). Having considered the parties' papers, the relevant legal authority, and the record in this case, the Court DENIES Defendants' motion.[1]

**BACKGROUND**

      Plaintiff The Ansel Adams Publishing Rights Trust (the "Trust") alleges that it owns all rights to the intellectual property of the late photographer, Ansel Adams, including his world-renowned name and the famous Ansel Adams trademark. (Compl., at p.1.) Norsigian claims to possess 65 negatives that he contends are lost negatives that were created by Ansel Adams. (*Id*., ¶ 34.) The Trust disputes that these negatives were created by Ansel Adams. (*Id*., ¶ 39.) According to the Trust, Defendants have unlawfully promoted and offered for sale the prints and

_____

[1] The Court DENIES Defendants' request for judicial notice and GRANTS Plaintiffs' unopposed request to file a sur-reply.

1   posters they call "Ansel Adams Lost Negatives" using the Ansel Adams trademark and Mr.

2   Adams' name and likeness.  (*Id.*, ¶ 38.)  Based on such allegations, the Trust brings the

3   following claims against Defendants: (1) trademark infringement, false designation of origin,

4   and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising under

5   the Lanham Act, 15 U.S.C. § 1125(a); (3) false endorsement under the Lanham Act, 15 U.S.C. §

6   1125(a); (4) trademark dilution under the Lanham Act, 15 U.S.C. § 1125(a); (5) violation of the

7   right of publicity under California Civil Code § 3344.1; (6) false advertising under California

8   Business and Professions Code §§ 17500, *et seq.*; (7) trademark dilution under California

9   Business and Professions Code §§ 14247, *et seq.*; (8) unfair competition under California

10  Business and Professions Code §§ 17200, *et seq.*; (9) trademark infringement under California

11  common law; and (10) unfair competition under California common law.

12       The Court shall address additional facts as necessary to its analysis in the remainder of

13  this Order.

14  **A.     Motion to Dismiss or Transfer.**

15       **1.     Venue is Proper in the Northern District of California.**

16       Defendants seek to dismiss or transfer this action on the grounds that the Northern

17  District of California is an improper venue.  Pursuant to 28 U.S.C. § 1406(a), a district court of

18  a district in which a case is filed in the improper venue "shall dismiss, or if it be in the interest

19  of justice, transfer such case to any district or division in which it could have been brought

20  originally."  The Trust has the burden of showing that venue is properly laid in the Northern

21  District of California.  *See Piedmont Label Co. v. Sun Garden Packing*, 598 F.2d 491, 496 (9th

22  Cir. 1979).

23       A civil action in which jurisdiction is premised on federal question may be brought in a

24  judicial district (1) where any defendant resides, if all defendants reside in the same State, (2) in

25  which a substantial part of the events or omissions giving rise to the claim occurred, or a

26  substantial part of the property that is the subject of the action is situated, or (3) in which any

27  defendant may be found, if there is no district in which the action may otherwise be brought.

28  *See* 28 U.S.C. § 1391(b).  "In a trademark infringement action, 'the actionable wrong takes

1    place both where infringing labels are affixed to the goods and where confusion of purchasers is

2    likely to occur.'"  *See Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 WL 701599,

3    *4 n.2 (N.D. Cal. March 23, 2005) (finding venue proper where there was a "possibility that

4    some potential purchasers of plaintiff's wine who reside in this district may be confused by

5    defendant's use of the ... mark.") (quoting *Make Up For Ever, S.A. v. SQHO Forever, LLC*, 198

6    F.R.D. 56, 61 (S.D.N.Y. 2000)).

7          In *Sutter Home*, the defendant maintained a website on which it advertised its wines.

8    Although the defendant did not sell wine on-line directly through its website, customers were

9    able to download an order form from the website and then mail or fax in the order.  *Id.*, 2005

10   WL 701599, *1.  The court held that venue was proper in the Northern District of California

11   because consumers who resided in the district could be confused by the defendant's use of the

12   mark in question.  *Id.*, at *4 n.2.  Similarly, here, Defendants advertise their prints and posters

13   through a website accessible by consumers in the Northern District of California.  Moreover,

14   consumers may purchase Defendants' prints and posters directly through the website.

15   Accordingly, the Court finds that venue is proper pursuant to 28 U.S.C. § 1391(b)(2).[2]

16         **2.     Transfer is Not Warranted.**

17         Defendants contend, even if this Court finds that venue is proper, that this action should

18   be transferred either to the Eastern or the Central Districts of California pursuant to 28 U.S.C.

19   1404(a).  Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any

20   district where the case could have been filed originally for the convenience of the parties and

21   witnesses and in the interest of justice.  A motion to transfer venue under § 1404(a) requires the

22   court to weigh multiple factors in its determination of whether transfer is appropriate in a

23   particular case.  For example, the court may consider:  (1) the plaintiff's choice of forum; (2)

24   the convenience of witnesses and the parties; (3) the familiarity of the forum with the applicable

25   law; (4) the ease of access to evidence; and (5) the relative court congestion and time of trial in

26   each forum.  *See, e.g., Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

27

28         [2]  Because the Court finds that venue is proper pursuant to 28 U.S.C. § 1391(b)(2),
     the Court need not determine whether venue is also proper pursuant to 28 U.S.C. §
     1391(b)(1).

1    The general rule is that the plaintiff's choice of forum is to be given substantial weight.  *See*

2    *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  The burden

3    is on the moving party to demonstrate that the action should be transferred.  *Commodity Futures*

4    *Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

5         Typically, a court should give a plaintiff's choice of forum great deference unless the

6    defendant can show that other factors of convenience clearly outweigh the plaintiff's choice of

7    forum.  *Decker Coal Co.*, 805 F.3d at 843.  Defendants have not demonstrated that the

8    convenience of witnesses and the parties, the ease of access to evidence, or that the interests of

9    justice clearly outweigh the Trusts' choice of forum and that such factors tip in favor of

10   transferring this case.  Accordingly, the Court concludes that Defendants have not met their

11   burden to show that this case should be transferred and, thus, denies their motion to transfer.

12   **B.    Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6).**

13        **1.    Applicable Legal Standards.**

14        A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

15   pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in

16   the light most favorable to the non-moving party and all material allegations in the complaint

17   are taken to be true.  *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  The court,

18   however, is not required to accept legal conclusions cast in the form of factual allegations, if

19   those conclusions cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness*

20   *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286

21   (1986)).  Conclusory allegations without more are insufficient to defeat a motion to dismiss for

22   failure to state a claim upon which relief may be granted.  *McGlinchy v. Shell Chemical Co.*,

23   845 F.2d 802, 810 (9th Cir. 1988).  Even under the liberal pleading standard of Federal Rule of

24   Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must

25   "provide the grounds of his entitlement to relief."  *Bell Atlantic Corporation v. Twombly*, 550

26   U.S. 544, 555 (2007) (internal brackets and quotations omitted).  The pleading must not merely

27   allege conduct that is conceivable.  Rather, plaintiffs must allege "enough facts to state a claim

28   to relief that is plausible on its face."  *Id.* at 570.

4

1

**United States District Court**
For the Northern District of California

2.      **The Trust's Claims for False Designation of Origin, False Endorsement and Trademark Dilution.**

3      Defendants argue that the Trust's claim for false designation of origin is barred by the

4  "*Dastar* Doctrine."  However, Defendants fail to define the "*Dastar* Doctrine" or otherwise

5  show how the Supreme Court holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*,

6  123 S. Ct. 2041 (2003) is applicable here.  Therefore, the Court denies Defendants' motion to

7  the extent they rely on *Dastar*.

8      Defendants further argue that the Trust's claim for false designation of origin, as well as

9  the Trust's claims for false endorsement and trademark dilution, are barred because their use of

10  the Ansel Adams mark constitutes nominative fair use.  The defense of nominative fair use

11  applies where the defendant has used the plaintiff's mark to describe the plaintiff's product, as

12  opposed to classic fair use where the defendant has used the plaintiff's mark to describe the

13  defendant's own product.  *New Kids on the Block v. News Amer. Publishing, Inc.*, 971 F.2d 302,

14  308 (9th Cir.1992).  "The nominative fair use analysis is appropriate where a defendant has

15  used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal

16  is to describe his own product."  *Cairns v. Franklin Mint Co.*,  292 F.3d 1139, 1151 (9th Cir.

17  2002).  To establish a nominative fair use defense, a defendant must prove the following three

18  elements: "First, the product or service in question must be one not readily identifiable without

19  use of the trademark; second, only so much of the mark or marks may be used as is reasonably

20  necessary to identify the product or service; and third, the user must do nothing that would, in

21  conjunction with the mark, suggest sponsorship or endorsement by the trademark holder."  *New*

22  *Kids*, 971 F.3d at 308 (footnote omitted).

23      Here, the Trust alleges that Defendants have used the Ansel Adams mark to describe

24  *Defendants'* product, the prints and posters.  Based on such allegations, which the Court must

25  accept as true for purposes of this motion, the defense of nominative fair use is inapplicable.

26  Therefore, the Court denies Defendants' motion to dismiss on this ground.

27      With respect to the Trust's dilution claim, Defendants make an additional argument that

28  this claim fails because the Trust has not alleged a second mark to blur or tarnish.  (Mot. at 21-

**United States District Court**
For the Northern District of California

22.)  To bring a dilution claim "the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark. ... Such a requirement comports with the statutory language, the four-part dilution test derived from that language outlined in [prior Ninth Circuit opinions], and with the statute's legislative history and purposes."  *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 905 (9th Cir. 2002).  Here, the Trust alleges that Defendants are using its mark, the Ansel Adams mark, to sell Defendants' products.  Therefore, the Trust has sufficiently alleged the use of an identical mark.  Accordingly, the Court denies Defendants' motion to dismiss on this ground as well.

> **3.      The Trust's Claim for False Advertising.**

Defendants contend that the Trust's claim for false advertising fails because their use of the term "Ansel Adams Lost Negatives" constitutes a non-commercial statement of opinion. According to Defendants, their use of this term relates only to the negatives and not about any of their prints.  (Mot. at 19.)  However, the Trust alleges that Defendants have made statements and claims that the prints and posters they offer for sale are the works of Ansel Adams. (Compl., ¶ 56.)  Again, based on such allegations, which the Court must accept as true for purposes of this motion, the Trust's claim is premised on Defendants' commercial speech. Accordingly, the Court denies Defendants' motion to dismiss on this ground.

> **4.      The Trust's Violation of the Right of Publicity Claim.**

Defendants contend that the First Amendment bars the Trust's right to publicity claim because their "use of the Ansel Adams name and likeness is related to a matter of great concern – the possible discovery of 65 glass negatives created by the iconic Ansel Adams."  (Mot. at 23-24.)  Under California law, the right of publicity grants specified successors in interest of deceased celebrities the ability to prohibit others from using the celebrity's name, voice, signature, photograph, or likeness for commercial purposes.  *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 391 (2001).  As the California Supreme Court explains: "The right of publicity is often invoked in the context of commercial speech when the appropriation of a celebrity likeness creates a false and misleading impression that the celebrity is endorsing a product. ... Because the First Amendment does not protect false and misleading

United States District Court

For the Northern District of California

1    commercial speech ..., and because even nonmisleading commercial speech is generally subject

2    to somewhat lesser First Amendment protection ..., the right of publicity may often trump the

3    right of advertisers to make use of celebrity figures." *Id*. at 396 (internal citations omitted).  On

4    the other hand, "[o]nce the celebrity thrusts himself or herself forward into the limelight, the

5    First Amendment dictates that the right to comment on, parody, lampoon, and make other

6    expressive uses of the celebrity image must be given broad scope. ... What the right of publicity

7    holder possesses is not a right of censorship, but a right to prevent others from misappropriating

8    the economic value generated by the celebrity's fame through the merchandising of the 'name,

9    voice, signature, photograph, or likeness' of the celebrity." *Id*. at 403.

10        To determine whether the First Amendment bars a right of publicity claim, courts must

11   examine "the purpose and character" of the defendant's use and determine whether "the new

12   work merely supersede[s] the objects of the original creation, ... or instead adds something new,

13   with a further purpose or different character, altering the first with new expression, meaning, or

14   message; it asks, in other words, whether and to what extent the new work is transformative."

15   *Id*. at 404.  Defendants do not address to what extent their use of the Ansel Adams name and

16   likeliness is transformative.  More significantly, the Trust alleges that Defendants' use of the

17   Ansel Adams name and likeness was use for purely commercial purposes – to market and sell

18   "Ansel Adams" prints and posters.  Based on the Trust's allegations, the First Amendment does

19   not bar its right of publicity claim.

20        **5.       The Trust's Remaining State Law Claims.**

21        Finally, Defendants summarily move to dismiss the Trust's remaining state-law claims

22   because the Trust does not separately plead additional facts in support of such claims but rather,

23   merely incorporates by reference the preceding allegations.  However, Defendants fail to

24   provide any authority that stands for the proposition that incorporating preceding allegations

25   renders such later claims insufficient.[3]  According, the Court denies Defendants' motion to

26   dismiss the Trust's remaining state-law claims.

27

28        [3] Defendants reliance on *Byrne v. Nezhat*, 261 F.3d 1075, 1129-30 (11th Cir. 2001)
     for this purported proposition is misplaced.

7

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' motion to transfer, or in the alternative, to dismiss.

**IT IS SO ORDERED.**

Dated: December 1, 2010

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

8